**E-Filed 11/20/2008**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL L. BALSAM,<br><br>    Plaintiff,<br><br>  v.<br><br>ANGELES TECHNOLOGY, INC., et al.,<br><br>    Defendants. | Case Number C 06-4114 JF (HRL)<br><br>ORDER[1] DENYING MOTION TO HONOR WRIT OF EXECUTION AND MOTION TO TRANSFER DOMAIN NAMES<br><br>[re: doc. nos. 55, 58 and 62] |

On March 28, 2008, the Court entered default judgment against Defendants Angeles Technology, Inc., Futurecast Media LLC, One World Media LLC, Grant Simmons, and John Solamito (collectively, "Judgment Defendants") and awarded Plaintiff Daniel L. Balsam $1,125,000 in statutory damages. To satisfy the damages award, Plaintiff requested that the Clerk of the Court issue writs of execution against Judgment Defendants as well as against Epoch, a financial services company alleged to process financial transactions on their behalf. Plaintiff presently seeks an order instructing Epoch to honor the writ of execution. In addition, Plaintiff requests that certain domain names allegedly owned by Judgment Defendants be

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 06-4114 JF (HRL)
ORDER DENYING MOTION TO HONOR LEVY ETC.
(JFLC1)

transferred to Plaintiff's control. For the reasons set forth below, Plaintiff's motions will be denied.

## I. BACKGROUND

From October 4, 2005 until June 1, 2006, Plaintiff was the recipient of multiple e-mails promoting various adult websites, including www.adultactioncam.com and www.adultactioncams.com (collectively, the "Websites"). Plaintiff then initiated the instant action, alleging in his first amended complaint ("FAC") that multiple individual and corporate defendants participated in the operation of the Websites in violation of California law restricting unsolicited commercial e-mail. The only named defendant to respond to the FAC was Carolynne Tilga, a former employee of Judgment Defendants Futurecast Media and One World Media.[2] The allegations against Ms. Tilga eventually were dismissed for lack of personal jurisdiction. After Plaintiff voluntarily dismissed all of the remaining parties except for the five Judgment Defendants, the Court authorized service of the FAC by e-mail. Judgment Defendants did not file a responsive pleading. The Court then entered default judgment in favor of Plaintiff.

In an effort to collect on the judgment, Plaintiff served a writ of execution upon Epoch. The alleged basis for Plaintiff's action is that one or more Judgment Defendants are operating the Websites and Epoch handles the collection of subscription fee proceeds on their behalf. Plaintiff further asserts that Epoch and/or its business affiliate Paycom (collectively, "Epoch/Paycom") then transfer the subscription fees to a third party, Belvedere St. James Ltd. ("Belvedere"), an offshore entity organized under the laws of Malta.[3] Belvedere originally was named in the FAC

---

[2] Plaintiff initially filed a complaint in California state court in May 2006. Ms. Tilga removed the state court action to this Court in June 2006.

[3] According to a declaration filed by Ms. Tilga in support of her motion to dismiss, Judgment Defendants One World Media and Futurecast Media were sold to Belvedere in August

as a defendant and was alleged to be the operator and copyright holder of at least one of the Websites.  Plaintiff since has alleged that Belvedere is the sole operator of the Websites and/or that one or more of the Judgment Debtors are merely shell companies controlled by Belvedere.  Despite these allegations, Belvedere has never been served with the operative FAC.

      Epoch/Paycom have refused to redirect the subscription fee revenue to Plaintiff, relying upon an alleged preexisting agreement to assign the subscription fee proceeds to Belvedere.  In response to a subpoena issued by Plaintiff, Epoch/Paycom produced a purported assignment agreement ("Assignment").  The effective date of the Assignment was January 2006, which predates the initiation of Plaintiff's lawsuit.  The Assignment appears to be related to an underlying "Universal Services Agreement" ("Services Agreement"), originally between Judgment Defendant One World Media and Paycom.net, LLC, which is described in the Assignment as a California limited liability company.[4]  The Assignment states that One World Media previously had assigned its rights under the Services Agreement to Judgment Defendant Angeles Technology.  Pursuant to the Assignment, Angeles Technology then assigned those rights to Belvedere, and Paycom.net, LLC assigned its respective rights to Paycom EU, a limited liability company based in Guernsey.[5]

---

2005.

[4] Plaintiff's brief does not clearly describe the relationship between Epoch and Paycom, nor does it attempt to explain the significance, if any, of the various Paycom entities.  In any event, such information is not necessary for resolution of the instant motion.

[5] The relevant portion of the Assignment states:

> Assignee [Belvedere] accepts this assignment and accepts all of Assignor's [Angeles Technology] duties and obligations under the Services Agreement.  Further, Assignee expressly agrees to assume any and all liability for chargebacks, creditbacks and all related fees, fines and penalties ("Liabilities") that may have been incurred by Assignor, including without limitation the Liabilities that may have been incurred by

3

Plaintiff asserts that any agreement between Epoch/Paycom and Belvedere regarding the transfer of subscription fees derived from Judgment Defendants' operation of the Websites cannot supersede Plaintiff's right to those funds under the default judgment. Plaintiff requests that the Court halt the transfer of fees to Belvedere and issue an order instructing Epoch/Paycom to redirect the subscription fee revenue to Plaintiff in order to satisfy the judgment. Plaintiff also requests that the Court declare Belvedere to be an "alter ego" of Judgment Defendants so that the default judgment may be enforced directly against Belvedere. As an additional means of satisfying the default judgment, Plaintiff requests that the Court transfer the ownership of the Websites' domain names, Plaintiff's intent being to auction the domain names to obtain partial satisfaction of the judgment.[6]

Belvedere, appearing specially, opposes both the motion to transfer the domain names and the motion to enforce the judgment by levy upon the subscription fees collected by Epoch/Paycom. Belvedere essentially admits that it owns the Websites. However, it argues that because Plaintiff thus far has failed to prosecute any action against it, seizure of its domain names and subscription fee proceeds would violate its right to due process. Belvedere also asserts that it is not subject to personal jurisdiction in California.

---

Assignor, including without limitation the Liabilities incurred by Assignor prior to the assignment ("Pre-Assignment Liabilities"). The Liabilities and Pre-Assignment Liabilities will be deducted out of Assignee's regular payment from Paycom EU. Assignee further acknowledges that Pre-assignment Liabilities may represent a substantial amount of the Assignee's payment from Paycom EU.

[6] To preserve Plaintiff's opportunity to auction the domain names, on October 7, 2008 the Court issued an order restraining the transfer of the domain names pending the resolution of the instant motions.

4

## II. DISCUSSION

Fed. R. Civ. P. 69(a)(1) states: "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution–and in proceedings supplementary to and in aid of judgment or execution–must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Accordingly, the Ninth Circuit applies California law to such proceedings. *See Katzir's Floor and Home Design, Inc.* v. *M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004). The relevant California statute, Cal. Civ. Proc. Code § 187, provides courts with broad and discretionary powers to enforce judgments. *See NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 778 (Cal. Ct. App. 1989). Such discretionary power includes the ability to amend a judgment to include additional judgment debtors. *In re Levander*, 180 F.3d 1114, 1121 (9th Cir. 1999). In addition, a court may order the seizure of property to satisfy a monetary judgment. *See* Cal. Civ. Proc. Code § 695.010(a).

### A. Enforcement of Judgment against Belvedere

"Judgments are often amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor." *NEC*, 208 Cal. App. 3d at 779. Such action is permitted by the equitable powers authorized by Cal. Civ. Proc. Code § 187, and is "based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." *Id*. To add a third party as a judgment debtor, a court must find that the third party (1) was an alter ego of the existing judgment debtor and (2) had exercised control over the litigation and thus effectively had an opportunity to contest the substantive allegations. *See Levander*, 180 F.3d at 1121 (citing *Triplett v. Farmers Ins. Exchange*, 24 Cal. App. 4th 1415, 1421 (1994)).

5

A nonparty may be treated as an alter ego if there is a "unity of interest" or common ownership of the nonparty and the judgment debtor. *NEC*, 208 Cal. App. 3d at 777. *See also Katzir's*, 394 F.3d at 1149 (alter ego theory should be invoked "only when corporate separateness is illusory."). Such unity of interest has been found to exist when, for example, there is common ownership of assets. *See NEC*, 208 Cal. App. 3d at 777. In the instant case, Plaintiff argues that Belvedere is an alter ego because it operates the Websites and accepts the revenue derived from such operation. However, Plaintiff has failed to present any other evidence tending to show that Belvedere is the alter ego of any Judgment Defendant. The mere receipt of revenue by Belvedere does not demonstrate that Belvedere is the alter ego of one or more of the Judgment Defendants.[7]

Plaintiff also asserts that Belvedere did receive actual notice of the instant litigation because the Court authorized service of the FAC via e-mail to the operator of the Websites, which subsequently has been shown to be Belvedere. Assuming that Belvedere received notice, Plaintiff argues that such notice "suggest[s]" that Belvedere had control of the litigation. Again, Plaintiff assumes too much. Control of litigation usually is evidenced by affirmative behavior

---

[7] Another possible route for recovery is the argument—made indirectly by Ms. Tilga in her declaration—that Belvedere purchased Judgment Defendants One World Media and Futurecast Media in August 2005 and thus may be subject to a form of successor liability. While Plaintiff has presented no argument as to how that transaction may have transferred Judgment Defendants' liabilities to Belvedere, the Court notes that Plaintiff will still face an uphill battle, as California law generally prohibits successor liability in the context of an asset purchase. *See Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05 0553, 2007 WL 2462142, at *6 (N.D. Cal. Aug. 29, 2007) ("California law generally provides that, with a few exceptions, successor liability does not attach in the context of an asset purchase"). "[T]ypically …the purchaser [of corporate assets] does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Id.* (quoting *Beatrice Co. v. State Bd. of Equalization*, 6 Cal. 4th 767, 778 (1993)).

such as the hiring of attorneys, payment of legal fees, and dictation of overall legal strategy. *See NEC*, 208 Cal. App. 3d at 781. In the instant case, there essentially was no litigation to control because Judgment Defendants defaulted. *See Motores De Mexicali, S. A. v. Sup. Ct.*, 51 Cal. 2d 172, 175-76 (1955). Mere awareness of a litigation is not sufficient to imply control. *See NEC*, 208 Cal. App. 3d at 781. On the limited record before it, the Court lacks sufficient basis for a conclusion that Belvedere exercised a level of control that would justify its inclusion as a judgment debtor. Rather, due process requires that Belvedere be afforded an opportunity to defend itself against Plaintiff's allegations. *See Katzir's*, 394 F.3d at 1149 ("The purpose of the requirement that the party to be added to the judgment had to have controlled the litigation is to protect that party's due process rights. Due process 'guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses.'") (quoting *Motores*, 51 Cal. 2d at 176).[8]

Moreover, as Belvedere points out courts are particularly hesitant to add third parties as judgment debtors when the underlying judgment has been obtained by default. *See generally NEC*, 208 Cal. App. 3d at 779-81. To permit a party to litigate only its relation to a judgment debtor, rather than the merits of the entire action, offends ordinary notions of fairness. *Motores*, 51 Cal. 2d at 176. Plaintiff contends that Belvedere was fully informed about the present litigation because it operated the Websites and presumably received the e-mails sent by Plaintiff. However, the Court's order permitting service via e-mail only applied to "Defendants Angeles, Futurecast, One World, Simmons, and Solamito." July 17, 2007 Order at 7. The Court may not

---

[8] Plaintiff was aware of Belvedere's alleged operation of the Websites prior to entry of the default judgment, as the FAC named Belvedere as a defendant and alleged essentially the same facts that presently are being asserted to justify the addition of Belvedere as a judgment debtor. However, as noted previously Plaintiff never served Belvedere and did not contest the dismissal of Belvedere earlier in the instant proceedings.

simply presume that Belvedere had adequate notice and an opportunity to be heard. Nothing in this order is intended to prevent Plaintiff from proceeding against Belvedere, or to suggest the Court's view with respect to Belvedere's argument that Belvedere is not subject to personal jurisdiction in California.

### B. Domain Name Transfer

Property of a judgment debtor may be seized to satisfy a money judgment. Cal. Civ. Proc. Code § 695.010(a). This rule applies to all forms of property–both tangible and intangible. Cal. Civ. Proc. Code §§ 680.290 & 680.310. Accordingly, courts have recognized that domain names are governed by the standard rules regarding property rights. *See Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (a domain name registrant has "an intangible property right in his domain name."). Thus, a domain name may be transferred to satisfy a judgment. *See* Cal. Civ. Proc. Code § 695.010(a).

In the instant case, a possible mechanism exists for transfer of the domain names at issue.[9] However, Belvedere objects to any transfer of the domain names for the same reasons that it objects to the transfer of the subscription fee revenue. Because Plaintiff has failed to show that Belvedere should be added as a judgment debtor, at least at this point, the Court declines to order transfer of the domain names. As with the subscription fee revenue, Plaintiff may proceed against Belvedere directly and attempt to prevail on the merits.

---

[9] Under the Anticybersquatting Consumer Protection Act, Congress has provided for *in rem* jurisdiction over domain names "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(A). Plaintiff has presented evidence that VeriSign, Inc. ("VeriSign") is the registry for "dot com" domain names. Because VeriSign is based in Mountain View, the res is located within the Northern District, and the Court may order VeriSign to transfer the registrar for the domain names. *See Am. Online, Inc. v. Aol.Org*, 259 F. Supp. 2d 449, 454-56 (E.D. Va. 2003).

## III.  ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion to order Epoch/Paycom to honor the writ of execution and Plaintiff's motion for transfer of domain names are DENIED. The Court's order of October 7, 2008 is hereby vacated.

IT IS SO ORDERED.

DATED: November 20, 2008

_____
JEREMY FOGEL
United States District Court

9

Case No. C 06-4114 JF (HRL)
ORDER DENYING MOTION TO HONOR LEVY ETC.
(JFLC1)

1  This Order has been served upon the following persons:

2  Andrew D. Castricone     acastricone@gordonrees.com

3  Dana Milmeister     dana@garyjkaufmanlaw.com

4  Gary Jay Kaufman     gary@garyjkaufmanlaw.com, marijana@garyjkaufmanlaw.com

5  Marijana Stanojevic     marijana@garyjkaufmanlaw.com

6  Timothy James Walton     ecf.cand@netatty.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 06-4114 JF (HRL)
ORDER DENYING MOTION TO HONOR LEVY ETC.
(JFLC1)